UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

SEBASTIAN LOZADA,                            :

                 Petitioner,           :

       - against -                         :

WILLIAM D. BROWN, Superintendent,    :

               Respondent.        :

--------------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/4/14
```

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
DEBORAH A. BATTS***

10cv3222-DAB-FM

**FRANK MAAS**, United States Magistrate Judge.

I.     Introduction

         Pro se petitioner Sebastian Lozada ("Lozada") brings this habeas corpus

proceeding pursuant to 28 U.S.C. § 2254 ("Section 2254") to challenge his conviction,

following a jury trial in Sullivan County Court, on two counts of Reckless Endangerment

in the First Degree and one count each of Attempted Assault in the First Degree, Criminal

Use of a Firearm in the Second Degree, and Criminal Possession of a Weapon in the

Second and Third Degrees.  On July 20, 2005, Justice Frank J. LaBuda, before whom the

case was tried, sentenced Lozada to terms of imprisonment amounting to an aggregate

fifteen-year sentence.

---

        *     This Report and Recommendation was prepared with the assistance of Ryan
Chabot, a student at Columbia Law School who served as an intern in my Chambers.

In his Petition, (ECF No. 1 ("Petition" or "Pet.")),[1] Lozada claims that his appellate counsel provided ineffective assistance.  Specifically, Lozada contends that appellate counsel did not adequately challenge the trial court's decision to remove his original defense attorney.  Lozada further contends that his appellate counsel failed to raise as appellate issues certain alleged deficiencies on the part of the attorney who actually represented him at trial.  Lozada does not assert any separate ineffective assistance of trial counsel claims.

For the reasons set forth below, the Petition should be denied. Additionally, because Lozada has not made the substantial showing of the denial of a constitutional right required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not issue.

I.      Background

        A.      Trial

                1.      People's Case

The People's proof at trial would have permitted a reasonable juror to find as follows:

On the evening of September 21, 2004, Carrime Stratton ("Stratton") approached Lozada and Gregory "Flex" Chapman ("Chapman") in Liberty, New York,

---

[1]      Lozada affixes to his form Petition an affidavit, sworn to on March 17, 2010, and a Memorandum of Law.  All three documents are paginated consecutively, and are hereinafter collectively referred to as Lozada's "Petition."

hoping to purchase marijuana.  (T1. 78; T2. 62).[2]  Lozada apparently offered Stratton

crack cocaine instead.  This led to a fight, during which Lozada was injured.  (T1. 55-56;

T2. 63-64).  According to Kevin White ("White"), a witness to the fight, Lozada left the

neighborhood later that night and returned with a nine-millimeter handgun.  (T1. 57-58).

The next day, one of Lozada's friends, Victor Kabakci ("Kabakci"), drove

to Liberty in a Honda CRV.  Kabakci eventually picked up Lozada and drove him and

two other men to a location where a Chrysler Pacifica was parked.  The Pacifica was

occupied by Chapman and his roommate, Timar Sinclair ("Sinclair").  (T1. 77-80, 87,

117, 141-45; T2. 32, 42).  Chapman exited the Pacifica and spoke briefly with the

occupants of the CRV while Sinclair remained in the driver's seat.

After a few minutes, Chapman returned to the Pacifica and directed Sinclair

to drive to the residence of Jerry Sledge ("Sledge") in Liberty.  (T1. 88, 148).  Sinclair did

so, with the CRV following behind.  As they neared Sledge's home, Chapman told

Sinclair to slow down, and then pointed out the window to identify Sledge's house for the

men in the CRV.  (T1. 88, 118; T2. 34).  Moments later, Lozada fired two shots from the

CRV in the direction of Sledge's house.  (T1. 118, 123-24, 127-28, 148-49).

Sledge, Stratton, White, and several others were on Sledge's front porch

when the shots were fired.  (T1. 110; T2. 61).  Sledge's fiancée, White's wife, and several

---

[2]      "Ex." refers to the exhibits annexed to the declaration of Assistant District
Attorney Bonnie M. Mitzner, dated July 13, 2012.  (ECF No. 6).  "H." refers to the transcript of
the pretrial hearing held on May 31, 2005 before Justice Labuda.  (Id.).  "T1."-"T4." refer to the
separately-paginated transcripts of each trial day.  (Id.).  "S." refers to the minutes of Lozada's
sentencing on July 20, 2005.  (Id.).

children were inside the house.  (T1. 113).  One of Lozada's bullets pierced the hood of a nearby van and became lodged in the engine compartment.  (T2. 16, 26).  The second bullet passed into the interior of the house, although no one was injured.  (<u>Id.</u> at 18).

Police responded to the shooting at approximately 8:30 p.m.  (<u>Id.</u> at 14).  Detective Scott Kinne ("Detective Kinne") was among the first to respond.  (<u>Id.</u> at 14-15).  After interviewing several witnesses, Detective Kinne obtained a description of the two vehicles involved in the shooting.  Officers initiated a search and eventually found Sinclair, who was driving the Pacifica along a road in Liberty.  The officers impounded Sinclair's vehicle, but were not able to get a statement from her at that time.  (<u>Id.</u> at 32-33).

The following day, Detective Kinne interviewed Lozada, who had become a suspect in the shooting.  (<u>Id.</u> at 44).  Detective Kinne first met Lozada at his house.  There, Lozada showed Detective Kinne some abdominal bruises and agreed to be questioned further at the Liberty Police Station.  (<u>Id.</u> at 44-45).  At the station, after Detective Kinne read Lozada his <u>Miranda</u> rights, Lozada agreed to speak to him.  (<u>Id.</u> at 45).  When Detective Kinne asked Lozada whether he had fired a gun at Sledge's house the day after the fight, Lozada laughed, but he gave no other response.  (<u>Id.</u> at 46).

A few days later, Detective Kinne discovered the CRV at a car dealership in Middletown, New York.  The vehicle recently had been traded in by Cynthia Melendez, the mother of Kabakci's girlfriend, who was its registered owner.  (<u>Id.</u> at 38).  Dealership

employees informed Detective Kinne that Kabakci was the CRV's primary driver.  (Id. at 38-39).

        After the police located Kabakci, he admitted his role in the shooting. Although he did not identify the shooter by name at that time, he pointed to Lozada's house as the location where he and the shooter had parted.  (Id. at 39-40).  Later, after he was shown a photo array, Kabakci identified Lozada as the shooter.  (T1. 180-83; T2. 6).

        White, Sinclair, Sledge, Stratton, and Kabacki testified at trial.  White and Stratton both confirmed that Lozada was involved in a fight with Stratton the day before the shooting.  (T1. 54).  Sledge and Kabakci both identified Lozada as the shooter.  (Id. at 123-24, 148-49).[3]

        2.    Defense Case

        Two witnesses testified for the defense.  The first was Adam Lauricella ("Lauricella"), a private investigator.  Lauricella showed the jury several photographs that he and his associate, John Kelly ("Kelly"), had taken at the scene of the shooting.  (T2. 71-72).  Lauricella explained that he had taken the photographs from the porch where Sledge and his friends were sitting when the shooting took place.  While Lauricella took the photographs, Kelly sat in their car on the street.  Lauricella testified that from his vantage point on the porch, he could not see Kelly's face.  (Id. at 72-74).

_____

        [3]      In his papers opposing the Petition, the respondent erroneously states that "[b]oth drivers testified that it was [Lozada] . . . who shot at the victim's home."  (ECF No. 6 at 11).  In fact, Sinclair, the driver of the Pacifica, testified that she had left the vicinity of the Sledge house before the shooting and did not hear any shots fired.  (T1. 89).

The other defense witness was Lozada's mother, Miriam Lozada ("Miriam").  Miriam testified that, on the night of the shooting, she arrived home at around 8:10 or 8:15 p.m.  (Id. at 84).  Less than five minutes later, she saw Lozada in the kitchen.  (Id. at 85).  After Lozada asked if he could invite a few neighbors to their house, Miriam looked at a clock and saw that it was 8:23 p.m.  Although it was late, Miriam agreed to allow the neighbors to visit so long as they remained relatively quiet.  She then went to sleep around 9:30 p.m.  (Id. at 87).

On cross-examination, the prosecutor asked why Miriam had not advised the police or prosecutor that Lozada had an alibi.  Miriam responded that she did not trust the prosecutor because she believed he did not like her family.  (Id. at 97-98).  Justice LaBuda then intervened in an effort to clarify whether Miriam had ever apprised the police of the alibi.  Miriam eventually testified that she had not.  (Id. at 100-01).

B.    Verdict

On June 16, 2005, the jury acquitted Lozada on the charges of Attempted Murder in the Second Degree and Criminal Use of a Firearm in the First Degree, but returned verdicts of guilty on the remaining charges:  two counts of Reckless Endangerment in the First Degree, and one count each of Attempted Assault in the First Degree, Criminal Use of a Firearm in the Second Degree, Criminal Possession of a Weapon in the Second Degree, and Criminal Possession of a Weapon in the Third Degree.  (T4. at 5-6).

6

C.      <u>Sentencing</u>

Justice LaBuda sentenced Lozada on July 20, 2005.  (S. 14-15).  The prosecutor sought the maximum sentence on each charge, with the sentences running consecutively.  He emphasized that Lozada continued to deny responsibility, that one of the bullets had landed within two feet of a six-month-old child, and that the sentences requested would send a strong deterrent message to future drive-by shooters.  (<u>Id.</u> at 4-9).

For his part, defense counsel first read aloud a statement prepared by Lozada, which noted "a few things that disturbed [him] during [the] trial."  (<u>Id.</u> at 9-10).  Lozada's complaints included the fact that he had been appointed a new lawyer shortly before trial, and that Justice LaBuda allegedly had prejudiced the jury against Miriam by asking his own questions during her cross-examination.  (<u>Id.</u> at 10).  The letter made clear that Lozada continued to assert that he was innocent.  (<u>Id.</u> at 11).

Turning to the issue of sentencing, defense counsel argued that the maximum sentence for attempted assault would more than suffice as punishment for all of the crimes.  (<u>Id.</u> at 12).  In doing so, he apparently opposed the prosecutor's request for consecutive sentences.  (<u>Id.</u>).

Justice LaBuda sentenced Lozada to concurrent fifteen-year sentences on the Attempted Assault and Criminal Use of a Firearm charges, two and-one-third to seven-year sentences on the Reckless Endangerment counts, and "the maximum" sentence on the two Criminal Possession of a Weapon charges.  The Justice did not expressly state, however, what that maximum sentence was.  (<u>Id.</u> at 15).

7

D.    Pretrial Proceedings

1.    Substitution of Counsel

Lozada initially was represented by David Gove, Esq., a court-appointed attorney.  During a pretrial hearing on May 31, 2005, however, Justice LaBuda informed Lozada that Mr. Gove could no longer represent him because Mr. Gove's supervising attorney had scheduled a vacation that overlapped with the trial schedule, and, as Mr. Gove conceded, Mr. Gove was too inexperienced to represent Lozada at trial without a supervising attorney present.  (H. 3, 29-31).  The court therefore appointed Glen Kroll, Esq., as Lozada's counsel.  (Id. at 3).  Both Lozada and Mr. Gove objected, contending that Lozada would be prejudiced by the assignment of a new attorney less than two weeks before trial.  (Id. at 4, 29).  Justice LaBuda overruled the objection, indicating that Mr. Kroll would have sufficient time to prepare and would receive assistance from Lozada's original attorneys if necessary.  The Justice further assured Mr. Gove and Lozada that the court would grant Mr. Kroll some leeway at trial since he was new to the case.  (Id. at 4-5).

2.    Pretrial Hearings

After the substitution of counsel, Justice LaBuda held a consolidated pretrial hearing to address various evidentiary issues raised by the defense's omnibus motion.  First, the Justice considered, pursuant to United States v. Wade, 388 U.S. 218 (1967), whether Kabakci would be permitted to identify Lozada in court.  During that portion of the hearing, Detective Robert Poplawski ("Detective Poplawski") testified that

8

on September 29, 2005, he showed Kabakci a photo array.  After being instructed that the photo array might or might not contain a photograph of the shooter, Kabakci identified Lozada.  (H. 33-38).

After hearing Detective Poplawski's testimony, Mr. Kroll conceded that, "[o]bjectively speaking, [the] photo array [was] fair."  (Id. at 42).  Justice LaBuda similarly concluded that the photo array was "eminently fair and reasonable" and that Kabakci therefore would be permitted to identify Lozada at trial.  (Id. at 44-45).

Next, pursuant to People v. Huntley, 15 N.Y.2d 72 (1965), Justice LaBuda considered the admissibility of Lozada's communications with the police after being given his Miranda warnings.  During this aspect of the hearing, Detective Kinne testified that Lozada had voluntarily agreed to accompany him to the Liberty Police Station on the day after the shooting.  (H. 48-49).  Once they were at the station, Detective Kinne read Lozada his Miranda rights and provided him with a waiver form.  After indicating that he understood his rights, Lozada signed the form and agreed to speak to Detective Kinne. (Id. at 50-51).  When the detective told Lozada that a witness had identified him, as the shooter, Lozada's only response was to laugh.  (Id. at 53).

After hearing this testimony, Justice LaBuda found that all of Lozada's post-Miranda communications were "voluntarily made" and were not obtained in violation of Lozada's constitutional rights.  (Id. at 62).  Accordingly, Justice LaBuda held that the People could reference Lozada's post-Miranda statements during their case-in-chief, so long as the relevance of those statements was established.  (Id. at 62-63).

9

E.      Subsequent Procedural History

1.      Direct Appeal

Yet another attorney was appointed to represent Lozada on appeal.  In the brief that counsel filed on May 4, 2006, Lozada asserted that:  (a) the trial court had deprived him of his Sixth and Fourteenth Amendment rights to aid in his own defense and to the effective assistance of counsel by assigning a new attorney only two weeks before trial;[4] (b) the trial court's intervention during Miriam's cross-examination deprived him of a fair trial; (c) his sentence was excessive and unconstitutionally harsh; (d) his conviction was contrary to the weight of the evidence and not supported by legally sufficient evidence; and (e) his case should be remanded for resentencing because the trial court failed to specify the length of his sentences on the two criminal weapon possession counts.  (Ex. B).

In a reply brief filed on June 29, 2006, Lozada further contended that United States v. Gonzalez-Lopez, 548 U.S. 140, 2006, decided by the U.S. Supreme Court only three days earlier, had created a new Sixth Amendment "right to counsel of [one's] own choosing."  (Ex. D. at 9).  According to Lozada, this "new rule" supported his claim that the trial court had violated his constitutional rights by removing Mr. Gove and substituting other counsel.  (Id. at 11).  This ground for appeal, Lozada argued, stood

_____

[4]      As counsel colorfully described this claim, Lozada "was passed around by the trial court and his attorneys like a joint at a fraternity party."  (Ex. B at 22).

10

separate and apart from the ineffective assistance of counsel claims that he previously had raised in his opening brief.  (Id.).

On December 14, 2006, the Appellate Division, Third Department, unanimously affirmed Lozada's conviction.  See People v. Lozada, 824 N.Y.S.2d 816 (3d Dep't 2006).  At the outset of its decision, the court noted that two of Lozada's claims had not properly been preserved, and therefore did not merit appellate review.  Id. at 818. As the Court explained, Lozada's sufficiency-of-the-evidence claim was unpreserved because he did not seek a trial order of dismissal specifically detailing the areas of deficiency.  Id.  Nevertheless addressing the merits, the court concluded that this claim also was baseless because two eyewitnesses had specifically identified Lozada as the shooter.  Id.  The court further held that Lozada had failed to preserve his claim regarding Justice LaBuda's questioning of Miriam because his counsel did not object and seek a mistrial on that ground.  Id.  Again addressing the merits in the alternative, the court found that the Justice's limited intervention did not give the appearance that he was advocating for the prosecution.  Id.

The court next turned to Lozada's weight-of-the evidence claim, which, in the court's view, essentially posited that Miriam was "more credible than the two eyewitnesses that identified [Lozada] as the shooter."  Id.  Weighing the witnesses' testimony "in a neutral light," and affording "due deference" to the jury's credibility assessments, the court was "unconvinced that the verdict was against the weight of the evidence."  Id.

11

The court next rejected Lozada's ineffective-assistance-of-counsel claim, finding that Mr. Kroll was adequately prepared, pursued reasonable trial strategies, engaged in effective cross-examination, and gave an effective closing argument.  Id.  The court did not specifically address Gonzalez-Lopez or Lozada's Sixth Amendment claim that he was entitled to counsel of his choosing.

Finally, the court rejected Lozada's sentencing claims.  The court determined that Lozada's sentence was not excessive, since he had shown "no remorse" for acts that endangered the lives of others, including children, and because there were no "extraordinary circumstances" meriting modification.  Id.   The court further rejected Lozada's claim that the trial court had failed to specify his sentence on the criminal possession charges as "belied by the record."  Id.

On December 17, 2006, Lozada sought leave to appeal to the New York Court of Appeals, (Ex. H), but later asked that the application be held in abeyance because he had retained new counsel who was moving to reargue the appeal.  (Ex. J).

2.      Motion to Reargue the Direct Appeal

On January 13, 2007, David Bernheim, Esq., Lozada's newly retained attorney, filed a motion to reargue the appeal, in which he contended that Lozada's prior appellate counsel had failed to brief all but one of the issues warranting reversal.  (Ex. F). In his brief, Mr. Bernheim first argued that both Gonzalez-Lopez and People v. Knowles, 88 N.Y.2d 763, 767 (1996), supported Lozada's claim that the trial court had violated his constitutional right to counsel of his choice by unilaterally discharging Mr. Gove.  (Id. at

12

1-4).  Second, he argued that Lozada's trial attorney failed to provide adequate

representation by, inter alia, failing to object to a pretrial identification and failing to offer

mitigating evidence at sentencing.  (Id. at 4-5).  Third, Mr. Bernheim contended that the

prosecutor had violated Lozada's Fifth Amendment right against self-incrimination by

eliciting testimony regarding Lozada's reaction to the investigators' post-Miranda

questions.  (Id. at 4-8).  Fourth, counsel claimed that the trial court should have instructed

the jury on the law governing accomplice liability.  (Id. at 8-9).  Fifth, he argued that the

trial court erroneously admitted irrelevant, inflammatory testimony about the impact of

drive-by shootings.  (Id. at 9-10).  Finally, Mr. Bernheim alleged a number of deficiencies

on the part of both Lozada's trial counsel and his prior appellate counsel, including trial

counsel's failure to object to these alleged violations of Lozada's rights and appellate

counsel's failure to argue that they should be reviewed for plain error.  (Id. at 1-2).[5]

       Soon after filing his motion to reargue with the Appellate Division, Mr.

Bernheim wrote to the Court of Appeals seeking to "supplement" the original leave

application filed by Mr. Diamond.  (Ex. K).  Before the Court of Appeals could rule on

that request, however, the Appellate Division summarily denied Lozada's motion to

reargue.  (Ex. I).  Judge Carmen Beauchamp Ciparick of the Court of Appeals then denied

both of Lozada's leave applications on April 4, 2007.  People v. Lozada, 8 N.Y.3d 947

(2007).

---

[5]     Lozada's Motion to Reargue and his First Writ of Error Coram Nobis are not paginated.  For ease of reference, I have inserted pages numbers on the originals of these documents.

3.      First Petition for Writ of Error Coram Nobis

On December 5, 2007, Mr. Bernheim filed a petition for a writ of error coram nobis, in which he argued that Lozada had received ineffective assistance of counsel in connection with his direct appeal.  (Ex. O).  In that petition, Lozada raised arguments substantially similar to those he previously had asserted in his motion to reargue.  Specifically, he contended that appellate counsel (a) failed to raise what allegedly would have been a winning argument under Knowles (id. at 9-11); (b) misstated the relevant holding of Gonzalez-Lopez (id. at 12-13); and (c) failed to raise various instances of trial counsel's ineffectiveness as grounds for appeal (id. at 13-29).

By order dated March 25, 2008, the Appellate Division summarily denied Lozada's petition.  (Ex. R).  Lozada then sought leave to appeal to the Court of Appeals, which application was denied on June 24, 2008.  (Exs. S, U).

4.      First Motion to Vacate Judgment

On March 25, 2008, Lozada filed a pro se motion to vacate his judgment of conviction pursuant to Section 440.10 of the New York Criminal Procedure Law ("CPL").  (Ex. V).  In May 2008, however, Lozada withdraw that motion.[6]  (Ex. X).

---

[6]      In his papers, Lozada had claimed to be in possession of newly-discovered evidence that would have impeached Kabakci's credibility at trial.  (Ex. V at 7-8).  In addition, Lozada contended that the prosecution failed to disclose a deal that allegedly had been offered to Kabakci in exchange for his cooperation.  (Id. at 9-12).  Finally, Lozada asserted that his trial counsel was ineffective because he failed to search for additional witnesses and did not emphasize the time of the shooting in relation to the purported alibi provided by Miriam's testimony.  (Id. at 13-17).

14

### 5.     Second Motion to Vacate Judgment

On August 28, 2008, Lozada filed a new CPL § 440.10 motion, which alleged only that his trial counsel was ineffective because he failed to establish the time of the shooting as part of his alibi defense.  (Ex. Y).  After the People opposed that motion, Lozada filed a response in which he also maintained that his conviction on the first degree attempted assault count was inconsistent with his conviction on the reckless endangerment counts.  (Exs. Z, AA).

In a decision and order dated December 18, 2008, Justice LaBuda characterized Lozada's motion as "grasping at straws."  (Ex. CC at 3).  The Justice observed that Lozada previously had litigated his ineffective assistance of counsel argument as part of his unsuccessful direct appeal, during which "any other instances of ineffective assistance could have and should have been raised."  (Id.)  Accordingly, the Justice held that Lozada was "not entitled to keep raising the same argument[.]"  (Id.).

Lozada's application for leave to appeal to the Court of Appeals was summarily denied on February 2, 2009.  (Exs. DD, FF).

### 6.     Motion to Set Aside Sentence

On February 10, 2009, Lozada filed another pro se motion, this time seeking to set aside his sentences pursuant to CPL § 440.20 on the theory that each of his convictions required the imposition of an indeterminate sentence.  (Ex. GG).  On June 15, 2009, Justice LaBuda denied that motion, noting that the Appellate Division already had rejected the claim on direct appeal.  (Ex. JJ).  Justice LaBuda further observed that he

15

would find Lozada's arguments meritless even if he were to consider them de novo.  (Id.).

As the Justice noted, Sections 70.02(1)(b), (2)(a), and (3)(b) of the New York Penal Law,

read together, "show[ed] that [Lozada]'s convictions for attempted assault in the first

degree, criminal use of a firearm in the second degree and criminal possession of a

weapon in the second degree are all class C violent felonies [that] require determinate

sentences[,] and a fifteen year determinate sentence is lawfully pr[e]scribed."  (Id.).

On July 14, 2009, Lozada sought leave to appeal the denial of this motion to

the Appellate Division, which request was denied on September 30, 2009.  (Exs. KK,

MM).

7.    <u>Second Petition for Writ of Error Coram Nobis</u>

On November 12, 2009, Lozada filed a second <u>pro se</u> petition for writ of

error <u>coram</u> <u>nobis</u>.  (Ex. NN).  In that petition, Lozada argued that (a) the court should

have instructed the jury that it could find Lozada guilty either on the reckless

endangerment charges or on the attempted assault and attempted murder charges, but not

both; (b) his trial counsel was ineffective because he failed to request such an instruction;

(c) the jury verdicts were inconsistent with one another; (d) his trial counsel also was

ineffective because he did not move to set aside the verdicts as inconsistent; (e) his trial

counsel was ineffective because he failed to establish the time at which the shooting

occurred; and (f) his appellate counsel were ineffective because they failed to raise all of

these issues as grounds for appeal.

16

On January 8, 2010, the Appellate Division denied Lozada's petition.  (Ex. PP).  When the Court of Appeals denied Lozada's application for leave to appeal on March 18, 2010, (Ex. SS), Lozada's quest to obtain relief from the New York courts finally came to an end.

F.     Habeas Petition

On March 31, 2010, Lozada filed a pro se Petition in the Northern District of New York.  (ECF No. 1).  Thereafter, Judge Glenn T. Suddaby transferred the proceeding to this Court because the conviction being challenged arose in Sullivan County, which falls within this Court's territorial jurisdiction.  (ECF No. 2).  The sole ground for habeas relief asserted in the Petition is that Lozada received ineffective assistance of appellate counsel in connection with his direct appeal.  (Pet. 4).  Lozada cites ten respects in which his appellate counsel allegedly was wanting.  Lozada first alleges that his appellate counsel inadequately argued his right-to-counsel-of-choice claim.  He further maintains that appellate counsel should have argued that Lozada's substitute trial counsel provided ineffective assistance because he (1) failed to object to the prosecutor's use of communications allegedly obtained in violation of Lozada's Fifth Amendment right to remain silent; (2) failed to request a jury charge regarding accomplice liability; (3) failed to object when the prosecutor elicited testimony concerning Lozada's prior drug activity; (4) elicited "otherwise inadmissible" testimony from Kabakci regarding his pretrial identification of Lozada; (5) failed to object to the prosecutor's inflammatory remarks during summation; (6) failed to advocate for the

17

minimum sentence; (7) failed to object to the allegedly inconsistent verdicts; (8) failed to

establish the time of the offense in support of Lozada's alibi defense; and (9) failed to

object when Justice LaBuda intervened in Miriam's cross-examination.  (Id. at 19-31).

III.    Discussion

      A.    Standard of Review

      A habeas corpus petition is not a vehicle to relitigate every issue previously

determined in state court.  Herrera v. Collins, 506 U.S. 390, 401 (1993).  Rather, a state

prisoner seeking habeas relief must show that he is "in custody in violation of the

Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The

petitioner bears the burden of proving, by a preponderance of evidence, that his rights

have been violated.  See Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

      Section 2254, as amended by the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), provides in part that:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim—
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1) (emphasis added).

As the Second Circuit noted in <u>Jones v. Stinson</u>, the Supreme Court has "construed the amended statute so as to give independent meaning to 'contrary [to]' and 'unreasonable.'" 229 F.3d 112, 119 (2d Cir. 2000).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Id.</u> (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000)).  Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409.  This standard does not require that all reasonable jurists would agree that the state court was wrong. <u>Id.</u> at 409-10.  Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" <u>Stinson</u>, 229 F.3d at 119 (quoting <u>Francis S. v. Stone</u>, 221 F.3d 100, 109 (2d Cir. 2000)).

Section 2254(d)(2) further authorizes federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  However, to the extent that a habeas petitioner challenges the state court's factual findings, Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and that "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." <u>Id.</u> § 2254(e)(1)

19

Although Section 2254 imposes a highly deferential standard of review, it does not require blind deference to every state court decision.  "If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail."  Williams, 529 U.S. at 389.

B.     Exhaustion

A habeas petitioner may not obtain review of his claims unless he can demonstrate that he has exhausted all available state court remedies, or that there is an absence of state corrective process, or that circumstances rendered that process ineffective to protect his rights.  See 28 U.S.C. § 2254(b)(1)(A)-(B).  Under New York law, a criminal defendant claiming ineffective assistance of appellate counsel may exhaust that claim only by filing a petition for a writ of error coram nobis.  Sweet v. Bennett, 353 F.3d 135, 142 n.7 (2d Cir. 2003); Garraway v. Phillips, No. 02 Civ. 9657 (JSR) (HBP), 2004 WL 1088097, at *4 (S.D.N.Y. May 14, 2004); People v. Bachert, 69 N.Y.2d 593, 595-96 (1987).  Each "substantially independent factual claim" alleging ineffective assistance of appellate counsel must be exhausted in state court before a federal habeas court may rule upon it.  Jelinek v. Costello, 247 F. Supp. 2d 212, 267 (E.D.N.Y. 2003).

Lozada filed two separate coram nobis petitions, both of which raised various claims regarding his appellate counsel's alleged ineffectiveness.  Of the ten ineffectiveness claims that he now seeks to pursue, nine were raised in at least one of Lozada's coram nobis petitions.  These nine claims therefore are properly exhausted and

20

subject to habeas review.  However, the last of Lozada's claims – that his appellate counsel were ineffective because they did not raise trial counsel's failure to object to the court's questioning of Miriam – was not raised in state court.  This claim therefore is unexhausted.

Although a federal judge reviewing a habeas petition need only address claims that are properly exhausted, it is understandable that Lozada might wish to have the merits of all of his claims addressed, given his extensive efforts to pursue post-conviction relief.   Moreover, there is always the possibility (however remote) that another court might reach a different conclusion concerning the threshold issue of exhaustion.  For these reasons, I have considered all of Lozada's claims on the merits.  As is set forth below, none of his claims warrants habeas relief.

C.    Merits

1.    Applicable Law

Claims regarding appellate counsel's ineffectiveness are judged by the same standard as claims regarding trial counsel's ineffectiveness.  Smith v. Robbins, 528 U.S. 259, 285-86 (2000).  To prevail on his ineffective assistance of appellate counsel claims, Lozada consequently must demonstrate that (a) his counsel's performance "fell below an objective standard of reasonableness" and (b) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 688-94 (1984).  A court considering

21

an ineffectiveness claim need not "address both components of the [Strickland] inquiry if the [petitioner] makes an insufficient showing on one." Id. at 697.

Under Strickland, there is a "strong presumption that [an attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. Therefore, Lozada "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [defense] strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). As the Second Circuit has noted, "[t]he Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

In presenting an appeal, counsel need not raise every nonfrivolous claim, but may select among them to maximize the likelihood of success. Jones v. Barnes, 463 U.S. 745, 751-53 (1983); see also Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) ("[C]ounsel does not have a duty to advance every nonfrivolous argument that could be made."). Because there is a "strong presumption" that counsel's conduct was reasonable under the circumstances, Lozada must show that appellate counsel did more than just omit from his appellate brief arguments that Lozada wished to raise. To establish that his appellate counsel were constitutionally ineffective, Lozada must show that they "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533.

22

Moreover, because Lozada brings his ineffective assistance of counsel claims under Section 2254, his burden is even higher.  Since the standards established by Strickland and Section 2254(d) are both highly deferential, "when the two apply in tandem, review is doubly so."  Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (internal citations and quotation marks omitted).  As the Supreme Court has cautioned, "[f]ederal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under [Section] 2254(d).  When [Section] 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.  "If this standard is difficult to meet, that is because it was meant to be."  Id. at 786.

      2.      Application of Law to Facts

          a.      Appellate Counsel's Failure to Adequately
                   Advance Lozada's Right-to-Counsel of Choice Claim

Lozada first contends that the trial court denied him his right to counsel of his own choice by discharging his original assigned attorney and appointing successor trial counsel.  (Pet. 4, 10, 20-24).  Although appellate counsel raised this claim in Lozada's reply brief on direct appeal, Lozada has two criticisms of the manner in which it was raised.  (Id. at 20).  First, Lozada contends that, in raising this claim, counsel should have relied on Knowles, a case in which the New York Court of Appeals held that a trial court may interfere with an established attorney-client relationship only when it

determines that counsel's participation presents a conflict of interest or that the defense's tactics "may compromise the orderly management of the trial or the fair administration of justice."  88 N.Y.2d at 767 (citations omitted).  Second, Lozada contends that it was error to raise the right-to-counsel-of-choice claim for the first time in his reply brief, since doing so caused it to be procedurally barred.  (Pet. 20 (citing Lurie v. Wittner, 228 F.3d 113 (2d Cir. 2000)).  Neither of these alleged "errors" suffices to support a claim under Strickland.

First, appellate counsel cannot be faulted for omitting an argument based on Knowles.  In that case, the New York Court of Appeals acknowledged a defendant's right to continued representation by an attorney who is "fully prepared to proceed" to trial. Knowles, 88 N.Y.2d. at 767.  Here, however, Lozada's original trial counsel were not "fully prepared to proceed," because the supervising attorney no longer was available on the scheduled trial dates.  (See H. 8).  Accordingly, this factual distinction might well have been fatal to a Knowles claim had one been raised on direct appeal.

Lozada further argues that the court should have adjourned the trial until after the supervising attorney returned from vacation.  (Pet. 23).  In Lozada's view, appellate counsel should have asserted a claim under Knowles that the trial court improperly interfered with his attorney-client relationship by denying a continuance.  (Id. at 22-24).  This argument, too, might well have failed on direct appeal.  Under Knowles, a trial court has discretion to manage its trial calendar.  88 N.Y.2d at 767.  Here, Justice LaBuda explained on the record that he could not adjourn the trial because he was

24

assigned to oversee matters in another county for the next two months.  (H. 3).  Although

another judge might have granted the requested continuance, Justice LaBuda's denial of

an adjournment arguably fell within his discretion to manage his trial calendar.

Given these shortcomings, Mr. Diamond could reasonably have viewed

Lozada's Knowles arguments as weak, and could therefore have chosen to forgo them in

favor of other potentially stronger arguments.  His performance in this regard

consequently did not fall below an objective standard of reasonableness.

Lozada's second claim – that appellate counsel was ineffective because he

waived the right-to-counsel-of-choice argument by raising it for the first time in his reply

brief – fares no better than his first.  At the outset, it is by no means clear, and indeed

seems unlikely, that the Appellate Division considered Lozada to have waived this claim.

It is true that New York courts typically refuse to consider claims that are raised for the

first time in a reply brief.  See, e.g., Giblin v. Pine Ridge Log Homes, Inc., 42 A.D.3d

705, 706 (3d Dep't 2006) (argument raised for the first time in reply brief "is not properly

before [the court]").  Here, however, Mr. Diamond could not have raised an argument

under Gonzalez-Lopez in his opening brief since that case had yet to be decided.  Cf. Roe

v. United States, 428 F. App'x 60, 67 n.2 (2d Cir. 2011) (claim raised in reply brief for

the first time not necessarily waived if the legal authority for the claim first arose after the

opening brief was filed).  Counsel cannot be deemed ineffective for failing to raise an

argument that was not yet backed by legal authority.  See Mayo, 13 F.3d at 533 ("Counsel

is not required to forecast changes in the governing law.").  This aspect of Lozada's

25

ineffectiveness claim thus also falters under the first prong of <u>Strickland</u>.  Moreover, even if counsel did waive this claim, the foregoing analysis suggests that the claim likely would have failed on the merits.  If so, Lozada also could not satisfy the second <u>Strickland</u> prong which requires a showing of prejudice.

> b.   Appellate Counsel's Failure to Raise
> <u>Instances of Trial Counsel's Ineffectiveness</u>

Lozada further contends that his appellate counsel was ineffective because he failed to raise a number of objections to the performance of Lozada's trial counsel. (Pet. 25-31).  As set forth below, there is no merit to any of Lozada's underlying claims regarding trial counsel's alleged deficiencies.  Appellate counsel therefore was not required to raise those claims as part of Lozada's direct appeal.  <u>See</u> <u>Gomez v. Duncan</u>, 02 Civ. 0846 (LAP) (AJP), 2004 WL 119360 at *34 (S.D.N.Y. Jan. 27, 2004) ("It is well-settled that appellate counsel cannot be faulted for failing to raise a meritless claim.").  The Appellate Division thus properly rejected Lozada's ineffective assistance of appellate counsel claims on <u>coram</u> <u>nobis</u> review.

> i.   Trial Counsel's Failure to Object to
> <u>Alleged Fifth Amendment Violations</u>

Lozada contends that he invoked his right to remain silent after being read his <u>Miranda</u> warnings, rendering the use of any post-<u>Miranda</u> communications, including non-verbal communications such as laughter, a violation of his Fifth Amendment rights. (Pet. 11-12, 25-26).  On this factual premise, he further maintains that trial counsel should

have objected to the use of these communications, and that his failure to do so rendered him ineffective.

To succeed on this claim, Lozada first would have to establish that his Fifth Amendment rights were in fact violated.  Justice LaBuda addressed this issue at the pretrial <u>Huntley</u> hearing.  At the conclusion of that hearing, Justice LaBuda found that Lozada was "fully Mirandized" at the Liberty Police Department before any questioning began.  (H. 62).  He further found that Lozada had waived his <u>Miranda</u> rights at that time because he did not request an attorney and did not expressly seek to terminate the questioning.  (<u>Id.</u>).  Justice LaBuda's factual findings must be presumed correct unless Lozada provides "clear and convincing evidence" to the contrary, 28 U.S.C. § 2254(e)(1), which Lozada has failed to do.  Accordingly, any post-<u>Miranda</u> response to police questioning – whether a clear admission of guilt or merely a nervous laugh – could not have violated Lozada's Fifth Amendment rights.

In any event, even if Justice LaBuda's factual findings were unwarranted, trial counsel properly preserved the Fifth Amendment issue for appeal by bringing a pretrial suppression motion.  There consequently was no need for him to make a redundant objection at trial.  <u>Cf.</u> <u>Choullam v. United States</u>, Nos. 05 Cr. 523 (LTS), 10 Civ. 5257 (LTS), 2011 WL 3962601, at *3 (S.D.N.Y. Sept. 6, 2011) (because defense counsel preserved Fifth Amendment issues by bringing a suppression motion, "[r]e-raising the objection at trial would have been a gratuitous gesture").

        ii.    <u>Failure to Request an Accomplice Liability Charge</u>

27

Next, Lozada claims that his trial counsel was ineffective because he failed to request a jury charge regarding accomplice liability.  (Pet. 26-27).  Lozada argues that he was entitled to such a charge because "[t]he theory of the prosecution's case was that both [] Kabakci and [] Sinclair were Petitioner's accomplices in a drive-by shooting." (Id. at 27).

To succeed on this claim, Lozada first must establish that he was entitled to an accomplice liability instruction.  Although Lozada does not provide any authority for his claim, it appears that it is based on CPL § 60.22, which prohibits a jury from convicting a defendant on the basis of an "accomplice's" testimony unless that testimony is corroborated by "evidence tending to connect the defendant with the commission of [the] offense."  CPL § 60.22.  A witness is considered an "accomplice" within the meaning of the statute if, "according to evidence adduced in [the] action, [the witness] may reasonably be considered to have participated in:  (a) [t]he offense charged; or (b) [a]n offense based upon the same or some of the same facts or conduct which constitute the offense charged."  Id.  In a typical accomplice witness instruction, the trial judge instructs the jury, as a matter of law, that particular prosecution witnesses were accomplice witnesses.  See 1 Howard G. Leventhal, Charges to the Jury and Requests to Charge in a Criminal Case: New York § 4.1 (2014).  The jury further is instructed that the "testimony of an accomplice witness" must be "viewed with suspicion and . . . accepted with caution" and that it "must be corroborated by a credible source."  Id.  Nevertheless, as the pattern instruction advises, "[n]ot every part of the testimony need be

28

corroborated," nor need the "corroborative evidence prove the commission of the crime," as long as it "tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy [the jury] that the accomplice was telling the truth." Id.

        Judged by these criteria, Lozada might well have been entitled to an accomplice liability charge had one been requested. Nonetheless, Lozada cannot show that he was prejudiced by his trial counsel's failure to request the instruction, since the prosecution presented ample corroborating evidence that linked Lozada to the crime. For example, White testified that Lozada had fought with Stratton the day before the shooting, thus suggesting that Lozada had a motive to commit the offense. (T1. 53-54). In addition, Detective Kinne testified that Lozada previously had frequented the neighborhood in which the shooting occurred. (T2. 46-47). Finally, Sinclair, who does not appear to have been a knowing accomplice, placed the CRV in which Lozada was a passenger in the vicinity of Sledge's house at the time that Chapman pointed to the house. (T1. 87-89). This corroborating evidence was more than enough to permit to the jury to find Lozada guilty based on Sinclair and Kabakci's testimony, even if the jury had considered them "accomplices."

        Since Lozada has failed to establish that an accomplice liability instruction would have changed the jury's verdict, he cannot show that he suffered prejudice by reason of trial counsel's failure to request one, and thus cannot prevail on this aspect of his ineffectiveness claim.

iii.   Trial Counsel's Failure to Object to
Testimony Concerning Uncharged Crimes

Lozada further claims that his trial counsel should have objected when the prosecutor elicited testimony from Stratton concerning Lozada's involvement in criminal activity for which he was never charged.  (Pet. 12-13, 28).  At trial, Stratton testified that on the night prior to the shooting, he had attempted to purchase marijuana from Lozada, but instead was offered crack cocaine.  (T2. 62).  Lozada argues that his trial counsel should have objected to this testimony as irrelevant, and should have requested a hearing to determine its admissibility.  (Pet. 28).

Lozada may well be correct that evidence of his prior drug activity had little, if any relevance to the charges for which he stood trial.  Indeed, prior to trial, Justice LaBuda determined that Lozada's prior drug convictions would be inadmissible because their prejudicial effect substantially outweighed their probative value. (H. 63-67).  Nonetheless, if defense counsel could have determined, in the exercise of sound judgment, that Stratton's testimony might help Lozada's case, he cannot be deemed ineffective for making the strategic decision not to object to the testimony at trial.  See United States v. Cohen, 427 F.3d 164, 170 (2d Cir. 2005) ("[D]ecisions such as when to object and on what grounds are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable absent exceptional grounds for doing so.") (internal quotations and citations omitted).

Here, there were strategic reasons for Lozada's trial counsel's failure to object.  Throughout the trial, defense counsel used the fact that Stratton had been attempting to purchase marijuana from Lozada on the night before the shooting to impeach Stratton's credibility as an alleged eyewitness.  Indeed, defense counsel's cross-examination of Stratton focused heavily on Stratton's addiction to marijuana and his prior drug convictions.  (T2. 64-68).  In summation, defense counsel also referred to Stratton as a "habitual chronic self-admitted drug addict[] who smoke[s] dope multiple times on a daily basis and . . . [was] smoking weed throughout the day [of the shooting]." (T4. 9).

Strickland imposes a strong "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" 466 U.S. at 689 (quoting Michel, 350 U.S. at 101).  Given this presumption, Lozada cannot establish that defense counsel was constitutionally ineffective for failing to object to Stratton's testimony concerning his attempt to buy drugs.  Rather, defense counsel could reasonably have decided that Stratton's testimony regarding the attempted drug transaction would reinforce the negative image that he had painted of Stratton, and would ultimately do the prosecution more harm than good.  In light of this possibility, Lozada cannot show that counsel's strategic decision violated his Sixth Amendment right to the effective assistance of counsel.

31

iv.   Trial Counsel's Discussion of Kabakci's
"Otherwise Inadmissible" Pretrial Identification

Lozada also contends that trial counsel was ineffective because his cross-examination established that Kabakci had identified Lozada's photo in a photo array a few days after the shooting.  (Pet. 13, 28-29; T1. 180-81).  Lozada complains that, by doing so, counsel opened the door to further discussion of Kabacki's "[p]reviously inadmissible" pretrial identification during the prosecutor's redirect examination. (Pet. 13; T1. 182-83).  According to Lozada, this bolstered the credibility of Kabakci's in-court identification and "squandered" his misidentification defense.  (Pet. 28-29).

The difficulty with Lozada's argument is that Kabakci had already identified him in court.  (T1. 148-49).  Moreover, Kabakci plainly had spent sufficient time with Lozada to be able to identify him as the shooter.  Accordingly, virtually the only way counsel could attempt to discredit Kabakci's in-court identification was to suggest that Kabakci had selected one of the five persons depicted in the photo array in an effort to ingratiate himself with the police.  (See id. at 180).  Indeed, counsel was able to secure admissions that Kabakci knew that the police "want[ed him] to identify one of the guys" and that he was "doing whatever they told [him] to do."  (Id.).  In a case with overwhelming evidence of Lozada's guilt, there was not a great deal else that Lozada's counsel could do to attempt to discredit Kabakci.

Moreover, by the time defense counsel began his cross-examination, several other witnesses also had identified Lozada in court.  (See T1. 86-87, 123; T2. 63).

Accordingly, even if the evidence concerning Kabakci's pretrial identification marginally

bolstered the credibility of his in-court identification, it was not likely to have changed

the jury's verdict.

In sum, because Lozada has not satisfied either <u>Strickland</u> prong, his

ineffective assistance claim regarding the use of Kabakci's pretrial identification must

fail.

        v.       Trial Counsel's Failure to Object to the
                  <u>Prosecutor's Allegedly Inflammatory Summation</u>

Lozada further argues that his trial counsel rendered ineffective assistance

because he failed to object when the prosecutor elicited testimony about Detective

Kinne's experience investigating drive-by shootings, and then stated in summation that

"these violent and deadly acts . . . must stop."  (Pet. 13-14; T1. 31-32; T3. 34).  Lozada

contends that the testimony elicited from Detective Kinne's regarding other drive-by

shootings was irrelevant, and that the prosecutor improperly inflamed the passions of the

jury by commenting on this testimony during summation.  In Lozada's view, trial

counsel's failure to object to these inflammatory remarks constituted ineffective

assistance.  (Pet. 14, 30).

The Supreme Court has held that prosecutorial misconduct does not rise to

the level of a constitutional violation unless the misconduct "so infected the trial with

unfairness as to make the resulting conviction a denial of due process."  <u>Donnelly v.

DeChristoforo</u>, 416 U.S. 637, 643 (1974).  To succeed on a prosecutorial misconduct

claim, a petitioner must identify specific instances of "egregious misconduct," id. at 647-48, that show he was substantially prejudiced.  United States v. Thomas, 377 F.3d 232, 244 (2d Cir. 2004).  In evaluating such a claim, the court considers the prosecutor's remarks in the context of the entire trial "to determine whether the prosecutor's behavior amounted to prejudicial error."  United States v. Young, 470 U.S. 1, 12 (1985).

Lozada first objects to the prosecutor's questions regarding Detective Kinne's previous experience investigating drive-by shootings.  Although Lozada contends that this testimony was "inflammatory" and meant only to "ignite the passions of the jury," (Pet. 30), Lozada has failed to demonstrate how this testimony could have unfairly prejudiced him.  In describing his previous investigations, Detective Kinne did not suggest that drive-by shootings posed a threat to the community, or that they were particularly heinous crimes.  Rather, Detective Kinne simply explained that drive-by shootings were difficult to investigate because the victims themselves often had been in trouble with the law, and thus were tempted to resort to vigilante justice rather than deferring to the police.  (See T2. 31).  Through this testimony, the prosecutor evidently sought to explain Sledge's conduct, since he initially had refused to cooperate with the investigation.  Lozada's contention that the testimony was unduly prejudicial consequently is wholly conclusory.

Of course, Lozada also objects to certain of the prosecutor's statements during summation regarding drive-by shootings.  As he correctly observes, his counsel failed to object when the prosecutor stated to the jurors:

34

> Ladies and Gentlemen, these violent and deadly acts, these
> drive-by shootings must stop.  They stop with you, they stop in
> this courtroom, and I am going to tell you why.  Before someone
> is killed.

(Pet. 30 (quoting T3. 34)).

There is no question that these remarks would better have been left unsaid.

Nevertheless, on habeas review, the issue is not simply whether the prosecutor's

comments were "undesirable or even universally condemned."  Darden v. Wainwright,

477 U.S. 168, 181 (1986) (quoting id., 699 F.2d 1031, 1036 (11th Cir. 1983)).  Indeed,

even conduct that unquestionably constitutes prosecutorial misconduct does not

necessarily entitle a petitioner to relief.  See Bentley v. Scully, 41 F.3d 818, 824-25 (2d

Cir. 1994).  Rather, there must be a showing that the petitioner "suffered actual prejudice

because the prosecutor's comments during summation had a substantial and injurious

effect or influence in determining the jury's verdict."  Id. at 824.

Here, even if the prosecutor's comment was intended to inflame the

passions of the jurors, it clearly constitutes an "aberration in an otherwise fair

proceeding."  United States v. Elias, 285 F.3d 183, 191 (2d Cir. 2002).  Given the

extensive evidence of his guilt, Lozada consequently cannot show that he was prejudiced

by the prosecutor's remarks and would have been acquitted had they not been made.  It

follows that even if Lozada's trial counsel should have objected to this line of argument,

Lozada cannot satisfy the second Strickland prong with respect to this aspect of his

ineffectiveness claim.

35

vi.   <u>Ineffective Assistance at Sentencing</u>

Lozada next contends that his trial counsel provided ineffective assistance in connection with his sentencing because he failed to advocate for the minimum sentence and, in fact, increased the likelihood of an enhanced sentence by reading aloud from Lozada's letter criticizing the trial court's intervention during Miriam's cross-examination.  (Pet. 17, 30-31).

Contrary to these assertions, Lozada's attorney effectively argued in favor of concurrent, rather than consecutive, sentences – which may well have been the best that he could have hoped to achieve under the circumstances.  Although Lozada also faults his lawyer for failing to present mitigating evidence, he has not shown that any such evidence exists.  Moreover, counsel can scarcely be criticized for reading Lozada's letter to the court since it is clear that Lozada wanted his counsel to do so.  (<u>See</u> S. 9 ("Mr. Lozada . . . has a statement he would like me to read . . . for him.")).

Finally, even if one were to assume that counsel should have argued for a lesser sentence, Lozada cannot establish a "reasonable probability" that, "but for" his failure to do so, "the result of [his sentencing] would have been different."  <u>Strickland</u>, 466 U.S. at 694.  Indeed, as Justice LaBuda noted, there were ample bases for imposing a sentence above the statutory minimum, including Lozada's "lack of remorse, and . . . the outrageous and dangerous facts of [the] case."  (S. 14; <u>see also</u> <u>id.</u> ("A drive-by shooting . . . is a case that requires the maximum sentence.")).  Thus, even if counsel had argued for a lesser sentence, it is highly unlikely that the court would have entertained that request.

36

Lozada consequently cannot establish that any error on the part of trial counsel at sentencing actually caused him prejudice.

vii.    Trial Counsel's Failure to Object
to Allegedly Repugnant Verdicts

Lozada also contends that his trial counsel rendered ineffective assistance by failing to object when the jury returned "repugnant" verdicts.  (Pet. 32).  Specifically, he argues that the jury erred by finding him guilty of both attempted assault and reckless endangerment.  As support for this argument, Lozada cites People v. Gallagher, 69 N.Y.2d 525 (1987), a New York Court of Appeals case in which the defendant faced charges of intentional and depraved mind murder arising out of his acts with respect to a single victim.  The court held that these two charges were inherently inconsistent because a guilty verdict on one of the charges would necessarily negate a guilty verdict on the other.  As the court explained, "[a] finding that defendant committed intentional murder by killing his victim with the conscious objective of causing his death precludes the inconsistent finding that defendant at the same time committed depraved mind murder by recklessly and thus unintentionally killing that same victim under circumstances evincing a depraved indifference to human life."  Id. at 529-30.

Gallagher is plainly inapplicable to Lozada's case because the two charges in Gallagher – intentional murder and reckless murder – related to the same victim.  Here, on the other hand, although all of charges against Lozada arose from the same incident, the charges requiring both an intentional and a reckless state of mind arguably related to

37

different victims.  Thus, Count 3 of the indictment charged Lozada with intentionally

attempting to cause serious physical injury to Stratton, while Counts 5 and 6 charged that

he "recklessly" fired his handgun at "numerous individuals" who were present,

respectively, "on an outside deck" and "inside" Sledge's residence.  (T3. 85-86, 88-91;

See Ex. A at 3-6).

       In light of these charges, the jury easily could have found that Lozada

intended to harm Stratton, and, in the course of doing so, recklessly endangered the lives

of others around him, both inside and outside the residence.  These verdicts, therefore

were perfectly consistent with one another.  Moreover, because the jury verdicts were not

repugnant, Lozada's trial counsel could not have rendered ineffective assistance by failing

to raise that issue with the court.

       vii.    Trial Counsel's Failure to
                       <u>Develop an Alibi Defense</u>

       Lozada also maintains that his trial counsel was ineffective because he

failed to develop Lozada's alibi defense adequately.  (Pet. 32).  In particular, Lozada

criticizes his counsel for failing to elicit testimony regarding the precise time that the

shooting occurred.  (<u>Id.</u>).

       Although there was no testimony concerning the exact time that the

shooting occurred, Detective Kinne did testify that he arrived at the scene of the shooting

around 8:30 or 8:45 p.m., after receiving a dispatch call a few minutes earlier.  Miriam

subsequently testified that Lozada came home that night no later than 8:23 p.m.  Had the

jury found this testimony credible, it could have acquitted Lozada on that basis alone. The fact that Lozada nevertheless was found guilty confirms that the jury did not find Miriam's alibi testimony particularly persuasive.

The only manner in which defense counsel could have bolstered Lozada's alibi defense would have been to present affirmative evidence that the shooting occurred after 8:23 pm. Lozada has not shown, however, that a more diligent advocate could have located a witness capable of corroborating that alleged fact. Indeed, it seems likely that no one knew exactly what time the shooting occurred. Counsel therefore cannot be faulted for failing to present evidence that does not appear to exist.

Had trial counsel completely ignored or rejected a potentially viable alibi defense, or failed to conduct any investigation with respect to it, Lozada might have some basis for a claim of ineffective assistance. In this instance, however, counsel presented an alibi witness and utilized her testimony to press Lozada's alibi defense in summation. (See T3. 28-29). In the absence of any showing that other evidence could have bolstered this defense, counsel's actions with respect to it clearly cannot be considered constitutionally ineffective.

ix.    Trial Counsel's Failure to
       Object to Judicial Intervention

Lozada's final claim is that trial counsel was ineffective because he failed to object when Justice LaBuda intervened during Miriam's cross-examination. (Pet. 14-17, 29-30). As noted previously, this claim is unexhausted. It also plainly lacks merit.

39

Although a trial judge has a constitutional obligation to avoid "excessive intervention" in a jury trial, any intervention would have to "reach a significant extent" and prejudice the defendant "to a substantial degree" to create a constitutional issue. Daye v. Att'y Gen. of N.Y., 712 F. 2d 1566, 1570, 1572 (2d Cir. 1983).  Thus, a trial "is not rendered unconstitutionally unfair every time a trial judge asks a question." Id. at 1572.

As the trial transcript confirms, Justice LaBuda did not elicit any new testimony from Miriam during his questioning of her during cross examination.  Rather, some of questions plainly were intended to ensure that the prosecutor did not inadvertently place his own credibility at issue.  (See T2. 98).  Other questions helped clarify testimony that the prosecutor previously had attempted to elicit.  (See id. at 97-98). Because the Justice's intervention "was neither significantly helpful to the prosecution, nor devastating to the defense," it cannot be said to have violated Lozada's right to a fair trial.  Daye, 712 F.2d at 1572.  Accordingly, trial counsel cannot have been constitutionally ineffective simply because he failed to object.

In any event, in its decision, the Appellate Division made clear that it would have rejected this claim on its merits even if counsel had raised an objection at trial.  (See Ex. E at 2 ("The court's repeated efforts to get [Miriam] to give a direct answer to a single question did not give the appearance that the court was an advocate for the People.")).  Lozada has not shown that this ruling constituted an unreasonable application

of clearly established federal law.  Accordingly, this claim, too, would fail even if it had been preserved.

*  *  *

In sum, Lozada has failed to overcome the many layers of deference that a habeas petitioner raising ineffective assistance of counsel claims must overcome.  To succeed in this forum, Lozada would have had to show not only that his trial counsel made objectively unreasonable errors, and that his appellate counsel unreasonably omitted those claims on direct appeal, and that he suffered prejudice, but also that the state court's decision denying his claims on coram nobis review was objectively unreasonable.  Lozada has failed to do so here.

IV.    Conclusion

For the foregoing reasons, Lozada's petition should be denied.  In addition, because Lozada has failed to make the substantial showing of the denial of a constitutional right required by 28 U.S.C. § 2253(c), a certificate of appealability should not issue.

V.    Notice of Procedure for Filing Objections to this Report and Recommendation

The parties shall have fourteen (14) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (e).  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of Honorable Deborah A. Batts at the United States Courthouse, 500

41

Pearl Street, New York, N.Y. 10007, to my chambers at the United States Courthouse,

500 Pearl Street, New York, N.Y. 10007, and to any opposing parties. See 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).  Any requests for an extension of time for

filing objections must be directed to Judge Batts.  The failure to file these timely

objections will result in a waiver of those objections for purposes of appeal. See Thomas

v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).

Dated:      New York, New York
            December 4, 2014


_____
FRANK MAAS
United States Magistrate Judge



Copies to:

Sebastian Lozada      (via U.S. mail)
DIN # 05-A-3868
Eastern New York Correctional Facility
Post Office Box 338
Napanoch, New York 12458

Respondent's Counsel via ECF